An injunction bill is not considered an original bill, and a service of the subpoena on the counsel of the plaintiff in the ejectment, will be a sufficient notice.

A question was made, whether the lessor of the plaintiff was entitled to a judgment, no notice to quit having been given by him to the defendants. But the court held that notice, by the English rule, was necessary only in cases where the relation of landlord and tenant subsists, and that such relation does not subsist in this case.

The defendants claim as the assignees of a contract of purchase, and there was no agreement that their assignor should enter into the possession. In the case of Spencer v. Marckel, 2 Ohio, 263, the court held that the English rule, as to notice, is not adopted by the law of Ohio.

---

## Case No. 3,959.

### DOE v. WELCH.

[See Case No. 11,456.]

---

DOEBLER (UNITED STATES v.). See Case No. 14,977.

---

## Case No. 3,960.

### DOGGETT v. EMERSON et al.

[3 Story, 700.][1]

Circuit Court, D. Maine. May Term, 1845.

EQUITY—RESCISSION OF SALE — FRAUD AND MISTAKE—LACHES—PRESUMPTION OF AGENCY—RATIFICATION.

1. Where a purchaser buys on faith of a false representation by the seller, touching the essence of the contract, the sale will be set aside in equity, whether the misrepresentation were the result of fraud or of mistake.

[Cited in Smith v. Countryman, 30 N. Y. 670.]

2. A seller is bound to act with the utmost good faith, and if he mislead the purchaser by a false or mistaken statement as to any one essential circumstance, the sale is voidable.

[Cited in Barnes v. Union Pac. Ry. Co., 4 C C. A. 199, 54 Fed. 90.]

3. Where a sale of certain timber lands was made in 1835, and the present bill was brought in 1841 to set it aside, for mistake and fraud, and it appeared, that false statements had been made by the seller, going to the essence of the bargain, on which the buyer had relied, and that knowledge of the fraud had not before come to the knowledge of the plaintiff,—it was held, that the lapse of time was not, under the circumstances, a bar to the suit.

[Cited in Webb v. Powers, Case No. 17,323; Veazie v. Williams, 8 How. (49 U. S.) 158; Marsh v. Whitmore, Case No. 9,122.]

4. Where a paper was executed by A, as agent of the defendant, to D, giving D the refusal of certain timber lands, for a certain time, at a certain price, and D subsequently sold the land to the plaintiff, and the deed of conveyance to the plaintiff was made by A directly, and not through D, and the plaintiff brought an action against A, and his principals, to set aside the sale on account of fraudulent misrepresenta-

tions by D,—it was held, that the circumstances created a legal presumption, that D was acting as agent of A and his principals, and that, as A, by his conduct, subsequently ratified the sale, he and his principals were responsible for all D's misrepresentations made at the sale, whether D exceeded his authority or not, inasmuch as they could not ratify a portion of the transaction and reject the rest.

[Cited in Foster v. Swasey, Case No. 4,984; Mason v. Crosby, Id. 9,234; Smith v. Babcock, Id. 13,009.]

5. Where a sale made by an agent is ratified by his principals, the agent's representations, made at the time of the sale, bind his principals.

[Cited in Hough v. Richardson, Case No. 6,-722; Mason v. Crosby, Id. 9,234; Veazie v. Williams, 8 How. (49 U. S.) 157.]

[This was a bill in equity by John Doggett against William Emerson and others.]

The bill, in substance, stated as follows: "That on or about the twenty-first day of February, in the year 1835, William Emerson, Amos M. Roberts, Isaac Farrar, Joseph W. Mason, and Nicholas G. Norcross, all of Bangor, in the state of Maine, merchants, defendants hereinafter named, purchased of the state of Maine, a township of land, numbered three in the thirteenth range of townships west from the east line of the state, containing, exclusive of land covered by water and the public lots reserved by the state, nineteen thousand eight hundred and twenty-five acres; that the said purchasers agreed to pay therefor, to the said state, sixty-four thousand four hundred and thirty-one dollars and twenty-four cents, it being three dollars and twenty-five cents per acre; one third part of which they paid in money at the time of the purchase, and for the remainder they gave their joint notes, which remain unpaid up to the time of filing this bill of complaint; that the said purchasers did not take a deed of conveyance of the said land, but made an agreement with the land agent of the said state, through whom the said purchase was made, whereby the said agent bound himself to convey the said land to the said purchasers or their assigns, when requested so to do. That the said Roberts, Farrar, Norcross, and Mason, agreed with the said Emerson, at the time of the said purchase, or shortly thereafter, that he, the said Emerson, should act as the agent of the company in selling the said land, and parts and portions thereof, which the said Emerson agreed to do. That a short time after the said purchase, as the plaintiff believes, some time in the month of May, in the year 1835, but the exact time the plaintiff does not know, the said Emerson, as well for himself as on account of his said associates, gave to one John Williams, then of the state of New Hampshire, but now of the state of New York, a certain bond, or obligation or power of attorney, wherein and whereby the said Emerson bound himself and his associates to procure a conveyance of the said land to be made to the said Williams or his assigns, on being paid therefor the sum of six dollars and fifty cents per acre; the sole object of

---

[1] [Reported by William W. Story, Esq.]